STATE OF LOUISIANA *v.* BENJAMIN MASON et al.

14 505
o109 839
o109 849

In a suit contesting an election on account of violence used in keeping voters from the polls, it should be alleged that there was a sufficient number prevented from voting to have varied the result; and the absence of such material allegations is fatal to the suit.

APPEAL from the District Court of the Parish of Jefferson, *Burthe,* J.
 *Wheelock S. Upton,* for plaintiffs. *W. T. Scott* and *A. N. Ogden,* for defendants and appellants.

COLE, J. Petitioners represent that they are citizens of the United States; that they reside in the town of Carrollton, a municipal corporation created by the Legislature of Louisiana, and wherein they have a right to vote.

That the municipal election, held in Carrollton on the 5th of April, 1858, was carried on and completed by the wrongful interruption of the right of free suffrage, by the intimidation of tumult and the interference of degraded banditti, brought from afar to thwart the exercise of their rights as electors.

That by no good and honest authority does one *Benjamin Mason,* under such election, hold the office of Mayor of the town of Carrollton, and that by no like right do *W. W. Cochran, C. C. Thompson, J. O. Neibert, E. A. Wilcox* and *E. St. Pierre,* hold the office of councilmen, but that the said *Mason* doth usurp the office of Mayor, and the others do likewise usurp the offices of councilmen.

That the said election was null and void, because very many of the electors of the town of Carrollton were prevented from the free exercise of the right of suffrage, by intimidation and threats.

That some were thwarted by personal violence, and others were stricken down with concealed weapons, carried and used by strangers, who were designated only as " Red Bill," " Big Tom," and such like *soubriquets.*

That these persons so designated, are believed to have been of the number of thirty or more, and that their appearance and force were intended and used to prevent a fair and impartial election at the polls on the 5th of April aforesaid.

Wherefore, they pray for the issuance of the writ of *quo warranto,* and that the said *soi-dissant* Mayor and Councilmen, be forbidden from any further performance of the duties in the offices and trusts they usurp.

There was judgment for plaintiffs, and defendants have appealed.

The writ of *quo warranto* is an order rendered in the name of the State, by a competent court, and directed to a person who claims or usurps an office, in a corporation, inquiring by what authority he claims or holds such office. C. P. Art. 867.

The petition merely accuses the defendants of having usurped their offices.

Usurpation conveys the idea of wrongful action on the part of him who usurps an office, but the petition does not accuse the defendants of any improper or illegal action on their part, but only alleges that they were usurpers, because other persons have acted illegally.

The petition admits that they hold the office by virtue of an election, and it is not contended that the election was not held on the day fixed by law, or that all the formalities of law were not followed by the commissioners of the election.

The defendants have shown that they received a majority of sixty-five votes,

64

and on the return of the commissioners, of their election, they qualified themselves and entered upon the discharge of their duties.

It thus appears that they are not technically usurpers, but have apparently the warrant of law for the tenure of their offices.

The intent of plaintiffs is, however, to go behind the certificate of their election, and to show it was so improperly conducted, that it ought to be viewed as a nullity, and defendants ought to be ousted from their offices, on the ground of never having been chosen according to law.

The defendants excepted to the sufficiency of the allegations in the petition, to have the election annulled, on four grounds. It is only necessary to consider two of them :

1. Because the right of defendants not being contested by any persons claiming for themselves a right to said offices, the grounds set forth were wholly insufficient to maintain the action.

It appears reasonable that no one but a person pretending to have a right to an office, should be permitted to contest the right of the incumbent of that office. If each citizen be entitled so to do, then a hundred or a thousand writs of *quo warranto* could be sued out.

Each citizen is, indeed, interested to have elections conducted without intimidation or tumult, but this interest can be manifested by prosecuting those who have sought to thwart the peaceful deposit of suffrages in the ballot-box.

Laws exist for the punishment of the disturbers of public elections. It is to be supposed these laws will suffice as a general rule to maintain sufficient order to permit the expression at the ballot-box of the will of the majority.

Exceptional cases may occur, as the present, where it is alledged, that a band of thirty men intimidated the population of a town, and prevented the free expression of public opinion.

Principles cannot be established for the exception, but the general rule.

It is, perhaps, better, that in a few instances, the results of elections should remain undisturbed, even when the will of the majority has been thwarted, than to allow each citizen to contest them.

For if every citizen possessed this right, more disorder would characterise the administration of public affairs, than would ensue from the occasional defeat of the will of the majority.

The judicial tribunals would be burdened with innumerable contestations of elections, and clogged in the execution of their ordinary duties.

Citizens, alarmed at the immense cost for attorney's fees and other things, would fear to run for offices, when the malice of any personal enemy might keep them in litigation during the whole term for which they were elected.

Conceding that Article 873 of the Code of Practice, implies the power of courts of justice to determine by the writ of *quo warranto,* the validity of the elections of the officers of a corporation, when the Legislature has not granted to the corporation this prerogative, except with regard to offices which are conferred in the name of the State, by the Governor, with or without the consent of the Senate, mentioned in Article 868 of the Code of Practice, still the law has not enunciated the rules which shall govern the courts in deciding upon the validity of elections under the writ of *quo warranto*, and the degree of interest which shall empower a party to inquire into the validity of an election.

It is true, that Article 869 of the Code of Practice declares, that a mandate to prevent the usurpation of an officer in a city or other corporation, may be ob-

tained by any person applying for it, but a person does not commit an usurpation who takes possession of an office by virtue of a majority of voters, manifested by the correct return of commissioners of elections duly appointed, of the votes cast and of those who are elected.

Webster's Dictionary defines usurpation to be the "act of seizing or occupying, and enjoying the power or property of another without right; as, the *usurpation* of a throne; the *usurpation* of the supreme power."

Bouvier's Law Dictionary explains usurpation, when used in relation to government, to be "the tyrannical assumption of the government by force, contrary to and in violation of the Constitution of the country." And in defining the word "tyrant," he says: "The term *tyrant* and *usurper* are sometimes used as synonymous, because usurpers are almost always tyrants; usurpation is itself a tyrannical act, but properly speaking, the words usurper and tyrant convey different ideas. A king may become a tyrant, although legitimate, when he acts despotically; while a usurper may cease to be a tyrant by governing according to the dictates of justice."

Although, then, Article 869 permits any person to apply to prevent the usurpation of an office in a city or corporation, still this Article would not apply to persons who have been duly and honestly returned as elected by the commissioners of election, as in the present case. Besides, "any person," used in this Article, cannot have been used in an unrestricted sense. No one would certainly contend that a foreigner just arrived upon our shores, would be entitled to sue out the writ of *quo warranto*, and inquire by what right the Mayor or Councilmen of a corporation held their offices. This Article means that "any person" having a sufficient *interest* to justify an action of *quo warrrato*, may institute it, and it is for the tribunals of the country to decide when the person applying for this writ, possesses such *interest* as to justify the courts in acting under it.

It is a rule appertaining to all suits, that a party cannot institute a legal proceeding without having sufficient interest to justify him.

Neither, then, Article 869, nor indeed any other of the Code of Practice, relative to the writ of *quo warranto*, justifies an action against persons in possession of offices who are not usurpers, unless it is granted by Article 873 by implication, and this Article does not declare the rules that shall regulate this proceeding, and does not specify the persons who shall be deemed to have a sufficient interest to apply for the writ. It then becomes the duty of courts to decide the degree of interest to be possessed by a person to justify him in applying for this writ. in order to oust any one from office. The Legislature of Louisiana have enunciated what they consider to be a sufficient degree of interest.

The Act of 1855, relative to elections, (Session Acts, p. 408,) only provides for the contestation of elections to certain specified offices, and only allows those who claim the right to hold those offices to contest the elections of those who pretend to have been elected, and this contestation must be commenced before parties get possession of the offices. See sections 41, 42, 45, 46 and 53 of said Act of 1855.

We can see no reason for differing from this view of the Legislature, and we are of opinion that the first exception was well taken by the defendants, and that plaintiffs were not entitled to the writ of *quo warranto* in this case, because they do not pretend to be entitled to the offices from which they wish to oust the defendants.

2. The other exception taken by defendants is, "because it was not alleged in

STATE
v.
MASON

the petition, that a sufficient number of voters were prevented from voting, to have varied the result of the election."

It is evident there would be no reason to contest an election, if the result could not be changed, and such would be the event, unless a number of voters had been prevented from voting, sufficient to have varied the result.

In *Augustin v. Eggleston*, 12 An. 367, this court held, that since elections are determined by the majority of the ballots cast, they are not to be set aside on account of the meagreness of the vote, " without distinct and circumstantial allegations of error, fraud, violence or illegality *affecting the result*."

In *Andrews* v. *Saucier*, 13 An. 302, it was held by this court, that " if the voters think proper to go forward and vote under a defective law, those who were candidates ought to be the last to complain, when the *result* has been affected by neither the unconstitutionality of the law, fraud, error, nor collusion."

The petition of plaintiffs was, therefore, essentially defective, as it did not contain this material allegation.

In conclusion, it should be observed, that it is not alleged that the defendants participated in any act of violence, or had in any manner interfered with or prevented persons from voting, or had aided and abetted any persons so doing.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be avoided and reversed ; and that there be judgment in favor of the defendant against the demand of petitioners, and that the writ of *quo warranto* issued at the demand of appellees, be dismissed, and that appellees pay the costs of both courts.

LAND, J., absent.