Statement of the Case.
MONROE, J.
Plaintiff and the defendant Sellers were opposing candidates for nomination to the office of .sheriff and tax collector of the parish of St. Charles, at the primary election held under the direction of the Democratic executive committee of the parish, on the 28th of January last past. The returns of the election were made by the commissioners to the chairman of the committee, and, on the third day after the primary (January 31st), the committee reconvened for the purpose of considering the tabulated and compiled statement, then to be submitted to them, and of promulgating the result. The defendant Sellers, however, presented a protest against the election, in which he alleges that, according to the returns, the following votes were cast in the different wards of the parish, to wit:
Ward 1 Madere 61 Sellers 29
Ward 2 “ 64 43
Ward 3 “ 19 9
Ward o “ 25 4
And that the committee “has declared, or is about to declare, said Madere” the nominee; that, at the election in question, the booths were not such as is required by law, in that they were open and accessible through windows from which the voters could be watched from the outside; that other persons than the voters were allowed within the barriers around the voting places and booths; and that said barriers and booths were provided by his opponent, Madere (in his capacity as sheriff).
That, in Ward 1, Ruffin Troxler, who would have voted for protestant, was illegally denied the right to vote; that George Lorio, a watcher for Madere, intimidated 15 voters, who would have voted for protestant, and either went into the booth with them or ordered Paul Hymel, a commissioner for Ma-dere, to do so, to help them mark their ballots, when, in truth, they needed no help, and that the votes in question should be stricken off.
That, in Ward 2, 10 persons, whose names ■are given, and others whose names “are not known,” all legal voters who would have voted for protestant, were denied the right to vote.
That, in Ward 3, Jules Keller and Wilson Weber, the clerks, were incompetent, and permitted James Lorio, a judge, representing Madere, to discharge their duties; that James Lorio was not a qualified elector in said ward; that the votes were counted behind closed doors; and that, included among them, were the votes of a minor, and of a major who had not paid his poll tax, both of which were cast for Madere.
That in Ward 5, Madere (a supporter of Anthony Madere), who was not an officer of election or a voter in said Ward, was permitted to sit at the table upon which the ballot *815 boxes were placed and to act as an officer; and that one - Faucheux, wlio acted as commissioner, was not a qualified voter t in tbe ward.
Wherefore he prays that the returns from Wards 1, 2, 3, and 5 be rejected, and the other returns (from Ward 4), alone, be considered, and that, upon the basis thereof, he be declared to have received the desired nomination, or else that a new election be ordered. The committee thereupon took action as follows:
“On motion of Charles Elfer-, duly seconded, the election held in the First,” Second, Third, and Fifth Wards be declared null aud void, and that T. B. Sellers be declared (he Democratic nominee for sheriff of St. Charles parish, and that the return of the Fourth Ward be promulgated as the result of the election for Democratic nominee for sheriff held January 28th, 1908. The yeas and nays being called, resulted as follows; Teas — Charles Elfer, C. M. Elfer, Felix Simoneaux, O. Iveller, L. L. Champagne, T. J. Sellers; Nays — A. Madere, R. E. Torregrossa; Blank — W. T. Patterson and L. Gassen.”
On the following day (February 1st), plaintiff filed in the district court the petition in this proceeding, in which he alleges that he and Sellers were candidates; that the votes in Wards 1, 2, 3, and 5 were cast as has been related, and that in Ward 4 he received 11 votes as against 45 cast for Sellers; that the chairman of the committee failed to tabulate and compile the votes, but submitted to the committee only the returns of the commissioners; and that the committee, fraudulently conspiring to deprive him of his rights, and in spite of the fact that he had received a majority of the votes legally cast, declared Sellers to be the nominee. Wherefore he prays that the action of the committee be reviewed and set aside, and that he be decreed to have received the nomination. On the petition so filed, the court made an order that Thomas B. Sellers (defendant, whose name appears in the title) and Thomas J. Sellers, the chairman of the committee, show cause, on Monday, February 3d, why the prayer should not be granted.
Defendant, for answer, says (inter alia) that plaintiff, as a member of the committee, voted, when his (defendant’s) protest was filed, upon the question of sustaining the same, and that by so doing he estopped himself from thereafter posing as a candidate; and he reiterates and amplifies the allegations of his protest. The committee also made answer affirming the validity and correctness of the action taken by it. On Monday, February 3d (the day upon which the case was first fixed), it was continued, pursuant to agreement of counsel reading as follows:
“It is agreed that this cause, having been opened, be continued, by consent of all parties, and without prejudice, from this day to Friday, February 7, '1908, at 12 o’clock, noon.”
And on Friday, February 7th it was taken up, and the trial was proceeded with during that day, and upon the next day until 4 o’clock p. m., when it was adjourned until Saturday, February 8th, at 11 o’clock a. m., when the trial was resumed and was proceeded with until 4:20 o’clock p. m., about which time counsel for plaintiff made “a formal application to the court to continue this case and hear it out to-night,” to which counsel for defendant objected on the ground that he was, or would be, “worn out,” and the court thereupon ordered a continuance until Monday, February 10th, when the trial was resumed and proceeded with until 10:27 p. m., at which hour counsel for defendant earnestly protested against going on any further, saying that he was sick, overfatigued, and unable to go on, and the case was accordingly continued until Tuesday, February 11th, over the objection of plaintiffs’ counsel. On the day last mentioned, after the introduction of further evidence, counsel for defendant interposed the objection that, three days having elapsed since the filing of the suit, the jurisdiction of the court was exhausted, and the objection having been overruled there was *817 judgment for plaintiff, from which defendant has appealed.
Opinion.
It appears from all the testimony in the case that the election was fairly conducted; that the plaintiff received a majority of nearly 60 of the legal votes actually cast, and that if all the votes shown to have been excluded, and all those shown to have been improperly received, were considered he would still have received a majority of the legal votes.
Nine votes which would have been cast for defendant were excluded because the name of the electors did not appear on the registration list, the fact being that their names are on the permanent roll (under the “grandfather” clause of the Constitution), which is separate from the other, and which, for some reason not explained, the clerk of the court had taken to his residence some 8 or 10 months before, and had not returned upon the day of the election. It does not appear that any of the electors mentioned informed the commissioners that they were so registered; that they made any inquiry for the roll; or that they, or either of them, demanded that they he allowed to vote on affidavits. A good deal of attention has been given to the failure of the authorities to provide booths constructed in conformity to the statute, wherein the voters might prepare their ballots; but not a witness in the case has testified that he saw or heard of an instance in which a voter had been overlooked whilst preparing his ballot, the testimony going only to the extent of showing that the voters might be seen whilst so engaged, but that bystanders could'not discover for whom he was preparing to vote. No evidence was adduced in support of the allegation that minors were allowed to vote; that voters were intimidated, or that there was any attempt at intimidation. It was shown that one major was allowed to vote whose name did not appear on the (paid) poll tax list for 1906, but there appears to have been no objection to the vote, and it seems to have been allowed through inadvertence rather than from any deliberate purpose to permit an illegal thing. It was also shown that one person, who acted as clerk, was not a qualified elector, because he had failed to pay his poll tax; that, in one or two instances, outsiders were permitted in the rooms in which the ballot boxes were kept; and that at one of the polls the doors were closed when the ballots were counted, and the public at large excluded. None of the witnesses, however, suggest that the clerk was guilty of any actual wrong, or that the outsiders interfered with, or influenced, any of the voters, or that the count, in the poll referred to, would have been different if the doors had been left open. Upon the question of the jurisdiction of the district court, as affected by the fact that its judgment was not rendered until after the expiration of three days from that upon which the rule nisi was made returnable, it is true that the law reads:
“Providing, however, that any candidate, feeling aggrieved by the decision of the committee, shall have the right to have same reviewed by a court of competent jurisdiction, and, provided, further, that he shall, within twenty-four hours after the decision of the committee, apply to said court, which shall issue a rule requiring the person, declared by the committee to be the nominee of the party, to show cause, within forty-eight hours, why the action of the committee should not be reversed and set aside and the relief asked for granted, which rule shall be tried and decided, and the judgment therein signed, either in open court or at chambers, within three days thereafter; an appeal from such decision may be granted, on simple motion, without citation, and shall be heard on the original record and testimony, and finally decided within five days from the rendition of the judgment of the court of the first instance; and, should said case not be so finally decided on appeal within said delay, then the decision of said committee shall be final and effective.”
It will be observed that the lawmaker imposes a penalty (upon the litigant) in the *819 «vent that the case shall not be “so finally decided, on appeal”; that is to say, shall not be finally decided, on appeal, within the time specified; but that it imposes no penalty, on any one, for the failure of the trial judge.to render his judgment within the three days allowed him; and we do not see our way to holding that the will of the people of a parish, in the. matter of selecting their officers, is to be defeated, and the individuals who have been so selected deprived of the honor and profit thus conferred on them, because the judge of the district court has been unable to do more than was reasonably possible. The judge might be prevented from deciding such a case by sickness or death, or, as in this instance, by reason of the fact that there were other cases of a similar character, and it was impossible to decide them all, and if the lawmaker had intended that the same consequence should follow his failure to decide as in case of such failure by this court, he would no doubt have said so.
Plaintiff’s counsel argued at some length the proposition that plaintiff forfeited his candidacy by sitting in the parish committee on his own case; but, whilst we do not wish to be understood as approving' plaintiff’s course in the matter, we have no authority for decreeing any such forfeiture as a consequence of it. Nor would we feel disposed to exércise such authority if we possessed it, since, of the six members of the committee who voted in favor of the resolution here attacked, one, the chairman, is the father of the defendant, and four others were candidates interested in the result of the primary, there having been in fact but one of them who was not so interested.
Our conclusion upon the whole case may be stated in the following excerpt which our learned Brother of the district court has in-porated in his able opinion, to wit:
“Where an election appears to have been fairly and honestly conducted, it will not be invalidated by mere irregularities which are not shown to have affected the result, for, in the absence of fraud, the courts are disposed to give effect to election, if possible. Cyc. vol. 15, p. 372.”
It is therefore ordered, adjudged, and decreed that the judgment appealed from be affirmed.