BEARD v. HENRY.

No. 6297.

Court of Appeal of Louisiana. Second Circuit.

Nov. 1, 1940.

Goff, Goff & Caskey and W. D. Goff, Jr., all of Arcadia, for appellant.

A. S. Drew, of Minden, for appellee.

TALIAFERRO, Judge.

Plaintiff and defendant were opposing candidates in the Democratic primary election held in Ward No. 6 of Claiborne Parish on October 15th. The position sought was that of party nominee as member of the Parish School Board. On the face of the returns made to and compiled and promulgated by the executive committee, 285 votes were cast for the plaintiff and 298 were cast for the defendant. Defendant was, therefore, declared the party nominee and his name was duly certified to the Secretary of State to be printed on the official ballot for the election on November 5th.

Plaintiff timely instituted this suit wherein he seeks to override the committee's action and to have himself declared the party nominee.

Ward No. 6 of Claiborne Parish has two voting precincts therein, to-wit:

No. 1, referred to as "Hurricane", and No. 2, referred to as "Aycock". The election returns from these precincts, according to the allegations of the petition, showed the vote to have been as follows, to-wit:

|  | Hurricane | Aycock | Total |
|---|---|---|---|
| Plaintiff | 222 | 63 | 285 |
| Defendant | 205 | 93 | 298 |

Plaintiff's majority at the Hurricane precinct was 17, while defendant's at Aycock was 30. The vote at Aycock precinct only is challenged and sought to be annulled. If the vote of this box should be entirely expunged, plaintiff will be left with a clear majority of 17 votes.

For a cause of action, plaintiff alleges:

Art. V. "That in conducting said election at said precinct Two (Aycock), no voting booths were prepared or used, no guard rails or barriers erected or used, as required by law; that the election was conducted and the preparation of the ballots by the voters done in a room with the commissioners and other persons present and there was and could be no secrecy in the marking of the ballots; * * * that because of the above illegal acts and the manner of holding same the said election and votes at Precinct Two (Aycock) should be declared illegal, null and void and disregarded in arriving at the results of said election, and your petitioner declared the nominee on the vote cast at Precinct One (Hurricane), giving him a majority of 17 votes.

Art. VI. "That the defendant, having knowledge of the illegalities above alleged and taking advantage of same, placed watchers in positions in and about the room in which the election was being conducted and the voting carried on who were acting under the instructions and supervision of the defendant to observe the manner in which and for whom the voters voting at said Precinct Two (Aycock) cast their vote, and because of the presence of these watchers some of the voters who were qualified and entitled to vote at said Precinct and who were supporting your peti-

tioners were reluctant about voting, and were only induced to go to the polls and cast their vote after earnest solicitation on the part of friends and supporters of your petitioner at said precinct.

Art. VII. "That on the day said primary election was held, October 15, 1940, Precinct Two (Aycock), a number of voters entitled to vote at said precinct were approached by one of the watchers placed at said precinct by the defendant and offered a sum of money for their votes and were informed by said watcher that he would be on the inside of the room and would watch them vote, and if they voted right, that is, for the defendant W. R. Henry, he would meet them on the outside and pay them off; that the voters went inside and voted and the watcher went in with them and watched them vote, but the voters refused later to accept the money offered to them."

Defendant excepted to the petition as disclosing neither a right nor a cause of action and also pleaded nonjoinder of party in that the Parish Democratic Executive Committee was not impleaded as a defendant. The exceptions and the plea were sustained and the suit was dismissed. Plaintiff brings appeal.

The integrity of the result of the election, as promulgated by the committee, will not to any extent be affected should the truth of Arts. VI and VII of the petition be admitted, and this is done in order to consider and dispose of the exceptions. As weapons of attack against the vote at Aycock Precinct, these allegations of fact are obviously without merit or force.

■ According to the allegations of Art. VI, plaintiff was not deprived of a single vote on account of the activities of persons accredited as watchers of the defendant. His supporters, though reluctantly, did go to the polls and cast their votes for him. When this was done, the matter ended. The votes were valid and were counted for plaintiff.

■ It is not specifically alleged in Art. VII how many voters were influenced to cast their ballots for defendant by promise of financial reward, nor are the names of such persons so influenced, declared. In the absence of specific allegations of fact in these respects, testimony would not be admissible to support the allegations as made; and, in addition, unless the number of votes procured in this manner was suffi-

cient to change the result of the election, it would be vain and futile, even if no legal objection barred the way, to prove that a less number were bribed to vote for defendant. It is not even generally alleged that votes in number sufficient to alter the election's result were procured in this manner.

It is obvious that appellant does not greatly depend upon the allegations of these two articles to sustain the sufficiency of his petition. Only casual reference is made to them in brief and oral argument. But Art. V is seriously argued and urged as a dependable predicate for the attack against the entire vote cast at Aycock Precinct. He plants himself squarely upon the proposition that the election, so far as concerns this precinct, is an absolute nullity and that not one of the ballots cast thereat should be allowed, but expunged, for the reason and because there were no facilities at the polls by and through which the voters could mark their ballots in secrecy; that all tickets were openly marked in violation of law, and should not have been received by the commissioners and, if received, should not have been counted.

The closing paragraph of Sec. 50 of Act 46 of 1940 is relied upon to sustain this position. It reads: "Any ballot wilfully marked in violation of this provision and any ballot wilfully exhibited will not be received by the commissioners, and if received notwithstanding this prohibition, it shall not be counted."

The paragraph immediately preceding this one prescribes the location of the election booths with respect to guard rails; and states that no voter shall be permitted to prepare his ballot therein when the door of the booth is not entirely closed. If the voter does not close the door, it is made the duty of the commissioners to do so.

Sec. 70 of said act prescribes in detail the acts to be performed by the voter, and the commissioners immediately preceding the deposit of the ticket into the box. The voter, after being given a ticket, is required to repair to the booth, close the door and there mark the ticket. On emerging from the booth it is his duty to present the ticket folded to a commissioner, who will remove therefrom the identifying slip. The voter, himself, then deposits the ticket in the box and retires. No commissioner is entitled to touch it after it is once handed to the voter.

We have to confess that the meaning of the above-quoted paragraph of Sec. 50 of the current primary election law is not entirely clear to us, particularly when studied in connection with other provisions of this law. The commissioners do not "receive" the ballot. If entitled to go into the box, the voter, himself, deposits the ticket; but, if for any reason, a ballot does go through a commissioner's hands and into the box without mark or other identifying evidence, there is no law or power to forbid it being counted as cast, even though it be for some legal cause invalid. We can conceive of instances, where, after a ticket has been marked and it is discovered that for some valid reason it should not be cast, the commissioner should take possession of it and, of course, not count it.

We. are clear in the opinion that the quoted paragraph of said Sec. 50 was not intended to have, nor has it the far-reaching effect contended for by appellant. Surely the electorate of a given precinct should not be deprived of the right to vote nor have their ballots, when cast, set at naught simply because designated officials have failed to observe some or all of the provisions of law relative to the secret preparation of the ballot. It is in no sense of the word the duty of the voters to provide such facilities.

The quoted provision does not appear in former laws on the subject and for this reason it is urged that an innovation was intended, so strong as to nullify a line of jurisprudence of this state extending back for a century. We are not in accord with this contention, notwithstanding that that part of Sec. 71 of Act 130 of 1916, as amended by Act 6 of the 1st extra session of 1934, reading as follows, "Provided further that the failure or refusal of the Mayor and Commission Council or other governing authority to carry out the provisions of this Section shall not have the effect of stopping or invalidating any election, the commissioners of election being hereby authorized to hold said election with the facilities available." was not carried into the 1940 act.

Other provisions of the 1940 act support our conclusion in this respect.

It is virtually impossible to conduct an election without some irregularities and illegalities taking place, but where conducted in good faith, free of fraud or intention of wrongdoing, full faith and credit will be given the result.

It is significant that plaintiff does not allege nor does he contend that because of the lack of facilities whereby the voters could mark their ballots in secrecy, he was deprived of a single vote; nor is it contended that had such facilities been furnished, the result at Aycock Precinct would have been different.

The 1940 act recognizes that regardless of the honest efforts of all persons charged with duties in connection with the holding of an election, irregularities will occur. Subsection (b) of Sec. 86 thereof in part reads: "Any candidate for a nomination for any office who shall claim that but for irregularities or fraud he would have been nominated, or that he would have been entitled to enter a second primary, and shall desire to contest the election, shall present a petition to the Judge * * *."

Therefore, before a candidate, defeated on the face of the returns, has the right to judicially challenge the declared result of the election, he must allege irregularities of such character and/or fraud in connection therewith, which, if true, encompassed his defeat.

It is our opinion that the holding of an election without facilities required by law to afford the electors opportunity to prepare their ballots in secrecy is an irregularity only.

In the recent case of Lafargue v. Galloway, 184 La. 707, 710, 167 So. 197, 198, the rule referred to is clearly expressed: "It is well-established law in this state, as well as elsewhere, that, to contest an election, not only specific frauds or irregularities must be alleged, but it must also be shown that the frauds or irregularities charged did in fact alter the result. Lanier v. Gallatas, 13 La.Ann. 175; State v. Mason, 14 La.Ann. 505; Andrews v. Blackman, 131 La. 355, 59 So. 769; Reeves v. Dean, 138 La. 889, 70 So. 871; 20 C.J., Elections, § 298, p. 231."

In the much earlier case of Webre v. Wilton, 29 La.Ann. 610, it was held: "The disregard of a merely directory provision in an election-law, will not invalidate an election held under that law, if such disregard has not admitted the votes of disqualified, nor excluded the votes of qualified voters, nor clothed the result of the election in doubt."

To same effect are: Womack v. Nettles, 155 La. 359, 99 So. 290; State ex rel. Todd v. Mills et al., 191 La. 1, 184 So. 350; Madere v. Sellers et al., 120 La. 812, 45 So. 735; Treadaway v. Plaquemines Parish Democratic Committee et al., La. App., 193 So. 609; Davis v. Hill, 8 La. App. 43, and many other cases.

It is seriously argued that the lower court erred in sustaining the plea of nonjoinder. We concur in this position.

The executive committee, after proclaiming the result of the election and declaring defendant the nominee, stripped itself entirely of jurisdiction in connection therewith. To challenge the validity of the election in whole or part, the committee was not a necessary party. It had no interest in the outcome of the contest between the two candidates. The above-referred to subsection (b) of Sec. 86 of the 1940 Act clearly directs the mode and method by which contests thereunder may be originated and conducted. The petition of the contestant therein referred to should be presented to the district judge, who, if he finds that the allegations justify him in doing so, "shall issue an order directing the contestee to answer the petition within five (5) days after service upon him", etc. Nothing is said about and no reference is made to the necessity of the committee being made a party to the action and since this is true, there appears no good reason for supplementing the procedure thus outlined by requiring something to be done which the act specifically omits.

The view thus expressed was specifically upheld by the Supreme Court in Vidrine v. Eldred, 153 La. 779, 96 So. 566, 568, wherein it is said: "Under the primary law the contestant must bring his action against the contestee (page 197, § 27), and the contestee is the apparently successful candidate (page 201, § 31). There is nothing in the law which requires that the committee be made a party to the suit, and, since the committee has no interest in the result, there is no reason why it should be."

To support the plea's relevancy, defendant relies upon Bauer v. Gilmore et al., La.App., 165 So. 739. This case is not analogous. There, the contestant challenged the action of the committee in its conclusion that a second primary should be held to nominate a second candidate for the legislature; one candidate having already been declared nominated at the first primary. The case in no respect involved the conduct of the election. The committee still retained jurisdiction of the question of nominees and the conduct of the second primary, and was, therefore, an indispensable party to the suit attacking its action.

The judgment appealed from, in so far as it sustained the plea of nonjoinder, is reversed and set aside, but in all other respects said judgment is affirmed with costs.

DREW, J., recused.