·(90 South. 104)

No. 24846.

## PAYNE v. GENTRY.

..·' (Nov. 4, 1921.) ·

*(Syllabus by Editorial Staff.)*

**1. Elections** ⇐169 — **Provision for nominations made by direct primaries prohibits placing on ballot name of candidate not so nominated.**

Acts 1916, No. 35, § 1, providing that political parties shall make all nominations by direct primaries, prohibits the Secretary of State from placing the name of any person on the official ballot as a candidate who has not been nominated in accordance with the act; and where it is not the duty of the Secretary of State to supply the ballots, the prohibition applies to the Board of Supervisors or other authority. ,

**2. Elections** ⇐169—**Placing on official ballot name of candidate defeated at party primary held illegal.**

Acts 1916, No. 35, § 27, providing that no one who participates in the primary election of any political party shall be permitted to be himself a candidate in opposition to any one nominated at or through a primary election in which he took part, one defeated at a party primary for the office of town marshal was not eligible as a candidate, and placing of his name on the official ballot under the heading "Nomination Papers" was illegal.

**3. Elections** ⇐8—**Statute relating to municipal elections held not repealed so far as it applied to towns of less than 2,500.**

In so far as Acts 1898, No. 136, provides (section 39) that the provisions of law governing state and parochial elections shall govern municipal elections and applies to elections in towns of less than 2,500, it was not repealed by Acts 1898, No. 152, or Acts 1916, No. 130, each repealing inconsistent laws, but excepting from its operation all municipalities with population of less than 2,500.

**4. Elections** ⇐143—**Nominating petition containing only 28 names of electors who participated in primary held insufficient.**

In view of Acts 1896, No. 137, § 50, providing that 100 electors shall sign a nominating petition, and Acts 1916, No. 35, and Acts 1908, No. 96, providing that no one who participated in a party primary shall be permitted to sign

nomination papers for opposing candidates, a petition containing the names of only 28 electors, all of whom participated in the party primary, was insufficient, and hence the printing of the nominee's name on the official ballot was illegal.

**5. Elections** ⇐237—**Candidate receiving majority of votes not being legally eligible for place on ballot, the election is annulled.**

Where plaintiff received 179 votes and defendant, whose name was illegally placed on the ballot, received 216, it is apparent that a majority of voters were deprived of their votes bringing the case within Acts 1894, No. 181, § 39, providing that no election shall be vitiated on account of negligence or illegal conduct unless it is proven that a sufficient number of voters were deprived of their votes to have changed the result. ,    . .

Appeal from First Judicial District Court, Parish of Caddo; E. P. Mills, Judge.

Suit by W. E. Payne against Robert Gentry. Judgment for plaintiff, and defendant appeals. Judgment annulled, election of defendant annulled, and election held April 19, 1921, annulled as respects the office of marshal of Cedar Grove.

Foster, Looney & Wilkinson, of Shreveport, for appellant.

Julius T. Long, of Shreveport, for appellee.

Statement of the Case.

OVERTON, J. This is a contested election case. At the Democratic primary held in the town of Cedar Grove, in the parish of Caddo, in February, 1921, plaintiff and defendant opposed each other for the ·nomination for the office of marshal of that town. Plaintiff received a majority of the votes, and was declared the nominee. No· contest resulted.

On April 18, 1921, the day before the general municipal election, the mayor, acting for himself personally and not officially, and for others, filed a petition with the town clerk nominating defendant, notwithstanding his defeat at the primary, for the office of marshal. This petition was signed by 28 per--

sons. All of the signers were registered as Democrats.

The tickets were printed, and on them there appeared the names of plaintiff and defendant as candidates for the office of marshal; that of the former as the nominee of the Democratic party, and that of the latter, under the heading "Nomination Papers."

While defendant did not assist in the preparation of the petition praying that his name appear on the ticket, nor sign nor circulate that petition, yet he had knowledge that steps were being taken in his behalf, for he testified that he saw the nomination papers before the day of election, and realized what they meant. He testified that the people solicited him to become a candidate, and that, at their solicitation, he consented.

Defendant did not solicit votes in his own behalf, but nevertheless stated as a witness that he desired to be elected.

In the election by the people, plaintiff received 179 votes, and defendant 216. The result was promulgated accordingly, and defendant, having received a majority, was declared elected.

Plaintiff then instituted this suit, the purpose of which is to have all votes cast for defendant decreed null and void, and to have himself declared elected, and, in the alternative, should the court not recognize him as elected, then to have the election vacated and set aside in so far as respects the office of marshal.

The grounds alleged for asking that votes cast for defendant be decreed null, tersely stated, are: That defendant had participated in the primary election, which made him ineligible as a candidate against the nominee chosen in that primary; and further, because the petition for his nomination was signed by less than 100 electors, and those signing were prohibited from doing so for the reason that they had participated in the primary; all of which plaintiff alleges was a fraudu-lent scheme on defendant's part to defeat the purposes of the law, and to secure his election.

Defendant denies the fraud, and asserts the validity of his election.

In the lower court there was judgment declaring plaintiff elected. Defendant has appealed.

It may be said that Cedar Grove has 1,980 inhabitants, and that Act No. 136 of 1898 is its charter.

### Opinion.

[1, 2] The authorities should not have printed defendant's name on the official ballot. He had participated and voted in the primary election in which plaintiff had been nominated. The law required that nominations by political parties be made by primaries, and prohibited any one who voted in the primary from becoming a candidate, in the election following, against the nominee chosen in that primary. These provisions of the law were applicable at the time, as they still are, to Cedar Grove, for section 1 of Act 35 of 1916 provides in part:

"That all political parties shall make all nominations for candidates for the United States Senate, members of the House of Representatives in the Congress of the United States, all state, district, parochial and ward officers, members of the Senate and House of Representatives of the state of Louisiana, and of *city and ward officers in all cities, towns and villages* by a direct primary election." (Italics ours.)

Then follows the prohibition against the Secretary of State's placing the name of any person on the official ballot as a candidate for any political party not nominated in accordance with that act.

The prohibition applies as effectively where it is not the duty of the Secretary of State to provide the ballots, but of the board of supervisors, or other authority, for the section declares party nominations by any other method illegal.

Section 27 of the same act provides:

"That no one who participates in the primary election of any political party shall have the right to participate in any primary election of any other political party, with a view of nominating opposing candidates, nor shall he be permitted to sign any nomination papers for any opposing candidate or candidates; *nor shall he be permitted to be himself a candidate in opposition to any one nominated at, or through a primary election in which he took part.*" (Italics ours.)

Therefore, the printing of defendant's name on the official ballot was illegal. This is not a case in which the voters have written, of their own motion, the name of a defeated primary candidate on the ticket, as was the case in Lacombe v. Laborde, 132 La. 435, 61 South. 518, but a case in which the authorities have permitted the name of such a candidate to be printed on the official ballot in violation of law, thus making him an official candidate.

[3] Not only was the placing of defendant's name on the ticket illegal for the above reasons, but it was illegal also for the reason that there was not filed a petition meeting the requirements of law nominating him.

The charter of Cedar Grove is Act No. 136 of 1898, generally known as the "Lawrason Act." On the subject of elections, it provides, in section 39 thereof, that the provisions of law governing state and parochial elections shall govern municipal elections, held within municipalities to which that act applies, in so far as they are applicable. At the time of the passage of that act the law governing state and parochial elections was Act 137 of 1896. It also governed all municipal elections. Two days after the Lawrason Act became effective, by promulgation, there also became effective Act 152 of 1898, another election law, general in its nature, and in 1916 still another, of the same nature, which is Act No. 130 of 1916.

Defendant contends that Act No. 152 of 1898 and Act No. 130 of 1916 repealed section 39 of the Lawrason Act, which is Act No. 136 of 1898, in so far as that section makes the provisions of law on state and parochial elections applicable to municipalities under the Lawrason Act, and also repealed the election laws in force at the time of the adoption of that section; and that, as a result, no provisions of law were left relative to nominating petitions, as to municipalities of the class to which Cedar Grove belongs, for the two repealing acts, by their terms, do not apply to municipalities of that class.

Act 137 of 1896 applied not only to parish and state elections, but also to all municipal elections. Section 39 of Act 136 of 1898 did not repeal the act of 1896, except possibly as to a few provisions, unnecessary to mention, nor does it seem to be so contended. Act No. 152 of 1898 repealed all laws or parts of laws contrary to or in conflict with it, but, in the first section of the act, it excepts from its operation all municipalities containing a population of less than 2,500. Hence, the repealing clause left in force the act of 1896, with a few exceptions, also unnecessary to mention, in so far as that act is applicable to municipal elections in towns containing a population of less than 2,500. The same is true as to the effect of the repealing clause of Act 130 of 1916, which contains, in its first section, an identical exception, and also contains, in its last section, a similar repealing clause. Therefore we should look to the act of 1896 to determine whether a nominating petition was necessary.

[4] We find that in section 50 of that act such a petition is necessary, and that it is essential that 100 electors should sign it. Only 28 did so, and those 28 had voted in the primary. Under section 27 of the primary election law, which is Act No. 35 of 1916, and also under Act No. 96 of 1908, those 28 had no right to sign, because of their participation in the primary, and their names should not have been counted in determining the

sufficiency of the petition. Therefore, the printing of defendant's name on the official ballot was illegal for this reason also.

[5] Defendant further contends that section 39 of Act 181 of 1894 prevents us from disturbing his election on account of the illegalities mentioned. This section provides that no election shall be vitiated on account of negligence, or on account of the illegal or improper conduct of any officer or other person, unless it be proven in a contest that a sufficient number of voters were deprived of their votes to have changed the result. As a matter of fact, a majority of the voters in this instance were deprived of their votes, or of the effect of them, which is the same, by the illegal action of the authorities in printing defendant's name on the ballot.

While we are clearly of the opinion that defendant was illegally elected, yet we cannot for this reason declare plaintiff, who received only a minority of the votes cast, elected. It is true every voter is charged with a knowledge of the law, and doubtless every voter knew that defendant had been defeated in the primary and had probably voted therein, though doubtless they did not know the facts as to the nominating petition. However, the placing of defendant's name upon the ticket by the authorities was the act of government, and sufficient effect must be given that act to protect the voters in relying upon the presumption that it was properly there. The voters have an interest in the matter. This is a democratic form of government, in which a majority, or at least a plurality, of the voters select their officers; and the court ought not to render a decree, the effect of which will be, in a race between two, to put the candidate receiving a minority of the votes cast in office, unless the law should clearly so state; and we do not find that it does so state.

While defendant was eligible to the office of marshal, yet he was ineligible to a place on the ballot; that is, as an official candidate. McCreary, in his work on elections, asks the question:

"Suppose the candidate who had received the highest number of votes for an office is ineligible, and that his ineligibility was known to those who voted for him before they cast their votes; are the votes then cast for him to be thrown out of the count, and treated as never cast, and should the minority candidate, if eligible, be declared elected in such a case?"

He answers the question by saying, in substance, that in England, when sufficient notice has been given of the ineligibility of the majority candidate, the one receiving the minority of the votes is declared elected, if he is eligible, but that in this country the weight of authority is decidedly against the English doctrine. McCreary on Elections (4th Ed.) §§ 327 to 331, inclusive. See, also, Hall v. Godchaux (No. 24920) post, p. 733, 90 South. 145.

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from be annulled and set aside, and it is now adjudged and decreed that the election of defendant be annulled, and that said election, by the people, held on April 19, 1921, be likewise annulled and held to have been of no effect, in so far only as respects the office of marshal. It is further ordered that defendant pay the costs of this court and of the lower court.

LAND and BAKER, JJ., not having heard the argument, take no part.