THOMPSON, J.
This is^a contest of the promulgated result of a primary election held January 15 of the present year under Act 97 of 1922, for the office of sheriff of the parish of St. Helena.
The plaintiff, Womack, and the defendant, Nettles, were rival candidates for said office in said primary, and the result as promulgated and certified to the secretary- of state showed that, the defendant had received 496 votes and the plaintiff 455, throughout the whole parish.
The plaintiff alleges that, notwithstanding the declared result, he received a majority of 13 votes of the legal votes cast and should be declared the nominee. He bases this claim on the allegation that no legal election was held in the Fourth ward of said parish, at which the returns showed that he received 48 and the defendant 102.
The irregularity and illegality charged against the election *in said ward is, in substance, that the polls were closed and the election terminated at 5 o’clock p. m., by 'reason of which many voters who desired to vote after that hour were deprived of the privilege of doing so; that on closing said polling place the ballot box was illegally removed by four of the five commissioners to the residence of Mann Story, one of the commissioners, a distance of about 200 yards, and placed in a vacant room in said private *362 residence, and which was accessible to all persons; that the box' was left in said vacant room, out of the presence of all of the election commissioners and of the deputy sheriff for about an hour; that the ballot box was unlocked for a portion of the time, and when the commissioners of election reassembled and counted said ballots, all of the ballots in said box were found to be lying flat and unfolded, indicating that, while said box was out of the presence of some or all of the commissioners and the deputy sheriff, the same had been handled and tampered with.
It is further alleged that, when the ballot box was left out of the presence of the commissioners of election and the deputy sheriff, the ballots were fraudulently tampered with, and the voting mark opposite the name of the plaintiff was erased, and a voting mark placed opposite the name of defendant.
The defense is that the election in the ward complained' of was honestly and iairly conducted, and was a free and fair expression of the will of the voters of said ward; that all of the commissiohers of said election were men of the highest standing and repute, and were incapable of any unfair or fraudulent practices; that the votes cast at said box were never changed or tampered with, and were publicly counted in the presence of ardent supporters of plaintiff; . that the polls were not closed until 7 o’clock, and no person entitled to vote was deprived of doing so; that the polling place was in a small house 12x14 feet in dimensions, having no window sashes; that the roof was full of holes and leaky, and there was no heat nor lights, and that the day was cold and rainy; that following the custom of some eight years the box was moved over to the residence of Story, one of the commissioners, late in the evening, where the polls were held open till 7 o’clock.
It is further alleged in the alternative that in the Fifth and Sixth wards the commissioners of election began counting the votes at 5 o’clock p. m., and that said wards gave the plaintiff a majority of votes over defendant, and that if the election in Ward 4 is annulled for the reason alleged, then, for the same reason, the election in Wards 5 and 6 should likewise be annulled, which would still leave the defendant the nominee.
On a trial of the case the demand of the plaintiff was rejected, and the suit dismissed; hence this appeal.
Opinion.
The facts as disclosed by oral testimony recorded on some 85 typewritten pages are practically undisputed, and succinctly stated are as follows:
The place in which the election was held was a very small one-room house, with one open door and two open windows,’ and with no heat either by fireplace or stove, and no light by which the votes could be tabulated and counted after night. There was no other nearby place that could be used.
Late in the evening, between 5 and 6 o’clock; and after the 150 ballots had been east, by agreement of all of the commissioners, the ballot box and all of the election material Was removed to the pouse of Mann Story, one of the commissioners, about 200 yards from the voting place. The same thing had been done at the two preceding elections. The box was placed on a table in the sitting room, where it remained pitil the vote was finally counted.
No one applied to vote after the removal of the box, either at the polling place or at Story’s residence, and it is fair to assume from t6e evidence that, if all the remaining qualified voters in the ward had come forward and voted and all had voted for plaintiff, the result would have been the same.
One of the comjnissioners, who was a supporter of the plaintiff, though not a qualified elector, went to his home to get his' supper, and it appears that in his absence *364 tli 3 other commissioners, who were supporters of the defendant, decided that it would facilitate the count if the ballots were unfolded and straightened out, and this the commissioners proceeded to do. In the process of unfolding the ballots the vote of the respective candidates for sheriff was ascertained and noted. This probably was the main purpose of unfolding the ballots. The ballots were not otherwise tampered with and were placed back in the box; the box was locked again, and was not opened or molested until it was opened at 7 o’clock for the general count of the votes.
The evidence conclusively shows that there was no opportunity for any one to have tampered with the box during the short interval that the coihmissioners were at supper. The unused ballots, after the count was completed, were ¡placed in the ballot box along with the ballots cast by the electors, and it is not even hinted that any of the unused ballots were substituted for any of those. legally voted.
It is not charged that the commissioners of election committed any fraud in opening the ballot box before the close of the polls, whether the purpose was to straighten out and unfold the-tickets, or for the special purpose of ascertaining the vote on the candidates for sheriff. Nor is it claimed that the actual vote as cast by the electors was altered or changed by the commissioners when they opened the box on the occasion and for the purpose state.d. '
On the contrary, the specific allegation of the petition is that, during the time when the ballot box was out of the presence of the commissioners of election and the deputy sheriff, the ballots therein were fraudulently tampered with, and the voting mark opposite the name of plaintiff was .erased, and a voting mark placed opposite the name of defendant instead.
It will thus be seen that the plaintiff not only fails to charge any fraud against the commissioners, but expressly declares that, if any change of the ballots in the box was made, it was done while the box was out of the presence of the commissioners. We have already shown from the evidence that this was impossible, because the commissioners were only absent from the box a few minutes, just long enough to get supper, and during this time Mrs. Story and, a portion of the time, several others who came to the Ijouse, were in the room,” and all of these, except Mrs. Story, who was not a witness, testified that the box was not tampered with while they were in the room.
Jf as a matter of fact there had been any change in the ballots in the box as alleged by the plaintiff, that fact was easily susceptible of definite proof by the plaintiff in summoning the 150 voters and having them testify as to how they voted.
It may be argued that, in view of the secrecy of .the ballot, the voters could not be required to disclose how they voted; but in answer it may be said that the law does not forbid the voter from voluntarily giving information as to how he voted, and if the 102 votes returned fox; the defendant had in fact been cast for the plaintiff, the resentment, and just indignation, and innate sense of justice and fair dealing, would have been so great on the part of those voters that they would not have hesitated, but would have made haste to disclose the information to the plaintiff.
It is very clear, from the plaintiff’s allegations and from the evidence, that in removing the box from the regular polling place to the residence of, the commissioner of election (Story) before the time for closing the polls no qualified voter was deprived of the right and privilege of voting, and the result of the election was not in any manner affected; and it is equally clear that the removal of the box to the residence was absolutely necessary for the convenience, comfort, and health of the commissioners, and was wholly *366 without any wrongful or fraudulent purpose on the part of the commissioners.
We are satisfied that the commissioners felt that they were not acting illegally nor committing any wrong, especially in view of the fact that the commissioners of election for the two previous elections had done the very same thing. While we say this as due the commissioners under the circumstances of this case, we cannot give judicial sanction and approval to such conduct under any and all circumstances. It is the duty of the proper authorities so to arrange the polling places as to provide for the comfort and convenience of those who may be called upon to conduct elections and to protect them from exposure to the weather, and the authorities should be required to perform that duty.
[1] Since no voters were deprived of the opportunity of easting their ballots by the removal of the box from the voting place to the residence of Story, and since no fraud is charged or proved against the commissioners in opening the box, and since it is shown that there was no opportunity for any one to open the box and alter or change the ballots during the short space of time that the commissioners were at supper, the case resolves itself in its ultimate sequence and last analysis into the simple question as to whether the entire vote of Ward 4 should be set aside, and the 150 electors who voted at said election in the'said ward be disfranchised, because of the conduct of the qommissioners of election in removing the box in the manner and under the circumstances as hereinbefore detailed. We think the question may readily be answered in the negative.
[2] It is a principle underlying all law and jurisprudence in matters of election by the people that an election will not be set aside for mere irregularities and illegalities, nor for negligence and improper conduct of the election officers, unless it is shown that a sufficient number of voters were deprived of their votes to have changed the result.
[3] Nor will an election be set aside, notwithstanding the misconduct of election officers, where the voters have had free and fair opportunity to express their will and have done so in a legal manner. See, generally, Ruling Case Law, vol. 9, p. 1092; Payne v. Gentry, 149 La. 707, 90 South. 104; Lucky v. Police Jury, 46 La. Ann. 679, 15 South. 89; Andrews v. Blackman, 131 La. 355, 59 South. 769; Vidrine v. Eldred, 153 La. 779, 96 South. 566.
And we may add that an election will not be set aside because of the removal by the commissioners of election of the ballot box and election material from the regular voting place to a nearby residence of one of the commissioners to protect themselves against the cold and inclement weather, and where the voting place is not provided with either heat or light, where it is shown that no qualified voter was denied the right to vote, and where no fraud is shown to have been committed, and where no opportunity has been afforded to others than the commissioners to change the result.
The whole theory of the plaintiff’s case is founded on the contention that, when the commissioners placed the box in the sitting room at Story’s residence and absented themselves for supper, an opportunity was afforded for the box to be tampered with by others and the result changed. But we have found that the evidence indubitably shows that there were Mrs. Story and others, some of whom were supporters of the plaintiff, who had a perfect view of the box all the while, and it is not pretendfed that any of them tampered with the box, and there was no opportunity for others to have opened the box while the commissioners were temporarily absent. Counsel cite in support of their position Hart v. Picou, 147 La. 1022, 86 South. 480, in which the court said:
“Experience has taught that those who violate the law in such matters cannot be relied upon to confess it. * * * In our opinion it *368 is not a question of the proof of fraud, but of the possibility of its being committed, that the lawmaker intended to guard against.”
The enunciation was obviously appropriate under the facts of that case, but has no application to the facts as presented in the instant case. In the cited case a peremptory and mandatory requirement of the election' law had admittedly been viQlated, not a legal ballot had been cast, and the entire election was null and void. Not so in the present case. The conduct of the commissioners, while irregular, was not in violation of any mandatory requirement of the law, nor in contravention of any prohibitive provision of the statute, and moreover there is no evidence of fraud, and, as we may state again, there was no sufficient opportunity for any one other than the commissioners of election to have changed the result.
After a thorough consideration of the case, we can discover no sufficient reason for disturbing the judgment appealed from, and the same is affirmed, at plaintiff’s cost.
LEOHE, J., concurs.
LAND and BRUNOT, JJ., dissent.