**DUMESTRE et al. v. VINCENT.**

No. 14306.

Court of Appeal of Louisiana. Orleans.
Nov. 28, 1932.

Emerson Bentley and Edward Rightor, of New Orleans, for appellants.

E. Howard M'Caleb, Jr., and Fred A. Middleton, both of New Orleans, for appellee.

HIGGINS, J.

This is a suit brought under the provisions of section 1419 of the Revised Statutes, as amended by Act No. 24 of 1894, to contest the election of a police juror for the eighth ward of the parish of Jefferson at the general election held on April 19, 1932.

The defendant filed an exception of no right or cause of action, which was sustained by the district judge, and plaintiffs have appealed.

Plaintiffs' petition reads as follows:

"The petition of Alexis C. Dumestre and of the more than ten other petitioners whose signatures are hereto attached by them all of whom are residents and duly qualified voters of the Eighth Ward of the Parish of Jefferson, respectfully shows:

"1. That your first named petitioner was the regularly selected candidate of the Democratic Party for the position of member of the Police Jury for the Eighth Ward of the Parish of Jefferson, so chosen at the Democratic Primary elections held on January 19th, 1932 and on February 23rd, 1932.

"2. That the name of your first named petitioner was according to law, printed on the official ballot at the General State Election, as a candidate for said office, and the name of no other was printed on said ballot as a candidate for said position.

"3. That at the General State Election held on Tuesday, April 19th, 1932, your first named petitioner was elected by the voters of the Eighth Ward of said Parish, as member of the Police Jury from said Ward of said Parish.

"4. That at the time of said General State Election there were Three Thousand One Hundred Sixty-Five (3,165) duly qualified electors of said Ward of said Parish, distributed as follows:

| First Precinct | 1,299 |
| Second Precinct | 290 |
| Third Precinct | 1,576 |

"5. That if your first named petitioner was not on the face of the legal returns elected, then at said General State Election, a sufficient number of the duly qualified voters of said Ward of said Parish were deprived of their votes for member of the Police Jury of said Ward of said Parish to change the result of the election therefor.

"6. That the duly qualified voters for the Second and Third Precincts of said Ward of said Parish constituted more than a majority of the voters of said Ward.

"7. That upon the closing of the poll at the Third Precinct of said Ward of said Parish on the day of said General State Election, the ballot box in which the votes of the electors of the Third Precinct of said Ward of said Parish for member of the Police Jury were cast, was forcibly taken from the possession of the election commissioners at said poll, went out of the possession of those legally entitled thereto and what was done with and what was done to the contents of said box from the time of the closing of said poll until the day after the election at noon was and is unknown.

"8. That all of the protection legally required for the preservation of the purity and integrity of the votes in said box were violated and the votes in said box were not counted by the commissioners or legally tallied by them and therefore cannot be counted.

"9. That under section 21 of Act No. 130 of 1916, the General Election law, it is made the duty of the Board of Supervisors of Elections of said Parish, within three days after the closing of the polls, publicly and in the presence of at least three voters and as many others as may desire to be present, to make a true and compiled statement as shown by the face of the sworn returns of the commissioners, in triplicate, of the result of such election and make public proclamation thereof.

"10. That on April 21st, 1932, your first named petitioner and a number of other voters of said ward of said Parish, called upon the Hon. F. J. Tillotson, Chairman of the Board of Supervisors of Elections for said Parish and requested to be informed when the meeting of said Board for said purpose would be had and the said Tillotson declined to inform them when said meeting would be had.

"11. That petitioners are informed that on the 22nd of April, 1932, said Board of Supervisors of Elections for said Parish met, declined to open said box from the Third Precinct, rejected the entire contents thereof and also declined to make a true and compiled statement as shown by the face of the sworn returns of the commissioners, in triplicate, of the ballot box of the Second Precinct of said Ward of said Parish, and declared that one, G. J. Vincent, Jr., who was not a candidate for said office, had been elected to said office by a vote of 275 for said Vincent as against a vote of 145 for your first named petitioner, according to the records contained in the box of the First Precinct of said Ward

of said Parish, and that the said Board so made return to the Secretary of State, who officially promulgated said returns in the States Times on May 4th, 1932.

"12. The said Board of Supervisors of Elections, as the ballot box for the Third Precinct of said Ward of said Parish had been for a long time out of the possession of the legally constituted guardians thereof, and as no true and compiled statement of the votes therein cast was made by the commissioners of election, were unable to perform their functions for said box and that the ballots cast in said box, even if the contents of said box have not been changed, cannot be counted because of sections 21, 22 and 23 of Act No. 130 of 1916, the General Election Law, requiring the commissioners of election to make an official count, to forward one copy thereof, to the Secretary of State, to seal up the third tally sheet in the ballot box and to deliver same to the Clerk of Court, sealed, for preservation for six months, carry the returns to the Board of Supervisors of Elections and the ballot box to the Clerk of Court and that the other provisions of said Sections of said Act were not only violated, but ignored and not complied with in toto.

"13. That the essentials for the preservation of the purity of the ballot required by the General Election Law were grossly violated in the case of the ballot box of the First Precinct of said Ward of said Parish, the contents whereof were made the sole basis of the compilation by the Board of Supervisors and the proclamation of the Secretary of State, in this, that section 17 of said Act requires that, immediately upon the closing of the polls the canvass and count of the ballots shall begin and shall be proceeded with' without interruption or delay until completed and that during the count three tally sheets shall be kept; that upon the closing of the poll, the doors of the poll in violation of law were barricaded; that the said canvass and count were not started for almost one hour after the closing of the poll and that only two tally sheets thereof were kept. That under Section 21 of the General Election Law it is the duty of the commissioners to keep duplicate lists of all persons voting and to sign and swear to same immediately upon the closing of the polls and before the opening of the ballot box; that at 2 A. M. of the night of said election, the said commissioners had not signed and sworn to the correctness of said list and had proceeded substantially with the opening of the box and the counting of the ballots. That under section 22 thereof it is the duty of at least two of the commissioners to carry the returns and the ballot box to the Board of Supervisors and Clerk of Court; that this they did not do and said box was not delivered to the Clerk of Court until the next day at noon. That under sections 17 and 18 of the General Election Law it is the duty of the commissioners to count up and enter the total votes cast as soon as same has been completed and to make public declaration thereof at once; that said duty was violated in that the totals were determined by the commissioners, but not entered or proclaimed until hours after they were determined. That said commissioners violated section 79 of the General Election Law in this that they did not, as soon as the poll was closed, at once rule off, sign and swear to the poll list and enter the total votes cast thereon, nor did they seal up and mark on the wrapper the Ward and Precinct number nor the number of unused ballots nor the number of spoiled or defaced ballots; that they did not publicly announce the number of votes as shown on the poll list; that they did not, in public view, count the ballots cast to see if they tallied with the poll list. That your petitioner is reliably informed and therefore believes and avers that at the First Precinct of said Ward and Parish the 'endless chain system' was used, that is, marked official ballots were presented to voters by another than a commissioner, without the poll, whereon the name of said G. J. Vincent, Jr. was written in pencil and the voters to whom same was presented were instructed when they received the honest ballots legally from the commissioners, to place same in their pockets, vote the marked ballots presented to them and return the blank ballots after they had left the precincts of the voting booth to the person who first presented them with the marked ballots and that same was done. That under the General Election Law, it is the right of all voters to stay and witness the counting of the ballots; that immediately upon the closing of the poll at said First Precinct of said Ward of said Parish, armed men in considerable number, were brought from other sections of the Parish for the purpose of intimidating the people of said Precinct from remaining at the poll and seeing that the vote was honorably counted and that a number of voters in said Precinct were so intimidated and actually withdrew from the neighborhood of the polling precinct.

"14. That your petitioners have good reason to believe that the said ballot box of the Third Precinct of said Ward of said Parish was stolen because said ballot box contained therein a sufficient number of votes to have elected your first named petitioner to said office over all other opponents.

"15. That the commissioners of election of the Second Precinct of said Ward of said Parish, upon the closing of the polls, announced that there were 89 straight democratic votes cast and that your first named petitioner thereby received 89 votes; that the said commissioners further announced that there were no other votes legally cast and thereupon they proceeded to make out returns whereby 89 votes were given to all the candi-

dates for State office, but no entry was made of the 89 votes for your first named petitioner; that same was intentional and done for the purpose of fraudulently depriving your first named petitioner of the advantage he had of having all the votes in said box. That at said meeting of the Board of Supervisors of Elections whereby they declared said Vincent elected by 275 votes to 145 for your first named petitioner, neither the votes cast at the second nor the votes cast at the third precinct were considered and that same constituted more than a majority of the voters of said Ward.

"16. That your petitioner avers that he was duly elected to said office of member of the Police Jury for said Ward of said Parish but if it is within the power of the Court to do so, your petitioner prefers, due to the number of frauds committed at said election, that said entire election be thrown out and the people of said Ward be given a fair and honest opportunity at another election to select a member of the Police Jury of said Ward and Parish.

"Wherefore petitioners pray that said G. J. Vincent, Jr., be duly cited to appear and answer this demand; that after due proceedings had that said election be declared null and void and that another election be ordered for member of the Police Jury for the Eighth Ward of the Parish of Jefferson and in the alternative your petitioner prays that he be declared duly elected member of the Police Jury for the Eighth Ward of the Parish of Jefferson.

"And for all general and equitable relief and all costs of Court."

Defendant's exception is based upon the following grounds:

First. That the irregularities charged by the plaintiffs, even if proven, are insufficient to set aside the election.

Second. That, giving the plaintiff, Dumestre, full credit for the 89 votes claimed to have been cast in his favor by the voters in the second precinct, the defendant would still be elected by a majority of 40 votes.

Third. That, while plaintiffs allege that Dumestre was elected, the allegations of fact set forth in the petition show that he was not elected, and therefore has no right to bring an election contest case under the provisions of Act No. 24 of 1894, which requires a contestant to set forth the facts on which he intends to contest the election and upon which he claims to have been elected; that, while the plaintiffs claim that, if the votes in the ballot box of the third precinct had been counted, Dumestre would have been elected, they allege in their petition that those ballots in that particular box should not be counted, first, because the ballot box was stolen; second, because on information and belief that the votes were tampered with; and,

third, because the commissioners failed to tabulate and make a return of the votes contained therein; consequently, the court is powerless to declare Dumestre elected without counting these votes.

■ The law is clear that the plaintiff, Dumestre, had the right to pray that the election be declared null and void and that another election be ordered on account of the alleged fraud and irregularities, or, in the alternative, that he be declared elected.

In the case of Guidry v. Dutel, 147 La. 883, 86 So. 318, 320, the plaintiff filed a petition to contest an election under section 1419 et seq. of the Revised Statutes. He prayed that he be adjudged to have been duly elected or, in the alternative, if the court should find that he had not been elected, that the election should be set aside and declared null and void and of no effect because of the alleged frauds and irregularities. The trial judge granted an order requiring the plaintiff to elect upon what ground he would pitch his case, his right to claim that he was duly elected, or that the election be set aside as null and void. The plaintiff applied to the Supreme Court for writs of mandamus, prohibition, and certiorari. On the first hearing, the Supreme Court affirmed the trial judge and held that the demands were inconsistent. On an application for rehearing, however, the court said:

"Our first impression was that the ruling complained of was correct—that it was inconsistent and illogical for plaintiff to demand, first, that he be declared validly elected, and, in the alternative, that the election be declared invalid. But, on further reflection, the alternative demands appear to be strictly in accord with the statute. Section 1422 of the Revised Statutes, providing for such contests, declares:

" 'The trial shall be conducted and submitted to the jury according to the laws by which other jury trials are governed. A majority only of the jurors shall be required to return a verdict. The jury shall have power to determine by their verdict which of the parties is entitled to the office, or to refer the same again to the people. The court shall have no power to grant a new trial as in other cases, and no appeal shall be allowed.'

"It is conceded, in the opinion of the district judge, that plaintiff might have urged both of the alternative demands in one suit, if he had reversed their order, demanding primarily an annulment of the election, and secondarily that he be declared elected. We do not see how that would have made the demands more consistent. In fact, there is no inconsistency in plaintiff's contending that he was elected, and that, if he was not elected, it was not because he was fairly defeated, but because the election was not legal."

In the case of Vidrine v. Eldred, 153 La.

779, 96 So. 566, 567, in passing upon the question of the inconsistency of this kind of pleading, the Supreme Court said:

"Plaintiff claims that the primary election for the Democratic nominee for mayor of Oakdale was a nullity, and, in the alternative, that he would be the nominee had the votes been properly counted.

"As he claims the nomination, he shows a right of action; and, since it may happen that the court may find that he has not received the majority of the votes, and may yet find that the election is a nullity and so declares it, it follows that he may in the alternative pray to have the election annulled. And we cannot see that it makes any difference that he changes the order, though not the substance, of his alternative demands. Andrews v. Blackman, 131 La. 359, 59 So. 769."

From the foregoing decisions it is plain that, if the plaintiff, Dumestre, has alleged sufficient facts, he may join the two demands, and it is immaterial which of the two prayers of relief is sought in the alternative.

Does he allege sufficient facts to give him a cause of action under either demand of his petition?

The allegations of fact in connection with and with reference to the ballots contained in the ballot box No. 1, of the first precinct, if standing alone, may or may not be sufficient, if proven, to set aside the election, as was said in Womack v. Nettles, 155 La. 359, 99 So. 290, 292: "Nor will an election be set aside, notwithstanding the misconduct of election officers where the voters have had free and fair opportunity to express their will and have done so in a legal manner."

But the allegations of misconduct on the part of the election officers in connection with this box must also be taken into consideration with reference to the other two boxes, particularly since it would appear that the number of ballots contained in the first precinct box were not greater than the combined number of ballots in the other two boxes.

The second ground of exception under which the defendant argues that, conceding that the plaintiff, Dumestre, was given full credit for the 89 votes cast in the second precinct box, that he would still not be elected, is sound as far as it goes, but, again, the irregularity charged with reference to that box must also be taken into consideration with the irregularities and frauds charged as to the other two boxes, tending to show that the fraud was so gross as to necessitate the annulment of the election and the holding of another one.

The most damaging and serious allegations of fact are with reference to the third precinct ballot box. The petition sets forth that there were 3,165 registered voters in the eighth ward, there being 1,299 in the first precinct, 290 in the second, and 1,576 in the third. As we read and understand plaintiff's petition, he states that, if the ballot box of the third precinct had not been stolen and the contents thereof tampered with, and if the votes that were legally cast in his favor in the third precinct had been counted according to law and proper return thereof made according to law by the election commissioners, the board of supervisors of elections, basing its tabulation upon the returns of the commissioners, would have been compelled, under the law, to have declared him duly elected. But the plaintiff goes on to further allege that, since the ballot box was out of the possession of those who were lawfully charged with its custody from the night of the election to the following day at noon, he preferred, if it was within the power of the court to do so, to declare the election null and void for the frauds committed in order that another election could be held, whereby the people would be given an opportunity of casting their votes for their choice for member of the police jury for the said ward, according to law.

This allegation is no doubt due to the fact that, in an election contest, the plaintiff must prove before the ballot box can be opened and the votes counted that there was no reasonable opportunity to tamper with it. Dutel v. Domingues, 166 La. 301, 117 So. 232; Thornhill v. Wear, 131 La. 739, 60 So. 228. But, in the instant case, the plaintiff was unable to make this essential allegation and proof because of the very allegation of the petition that the box had been stolen and was in the illegal possession of third parties for a great number of hours, thus affording a reasonable opportunity to change the contents thereof. Should the mere fact that he could not conscientiously allege that there was no reasonable opportunity to tamper with the votes of this box deprive the plaintiff, Dumestre, who claims to have been elected, of the right to ask the court to annul the election for the frauds, illegalities, and irregularities alleged? We think not. Our courts have frequently annulled elections. Payne v. Gentry, 149 La. 707, 90 So. 104; Hall v. Godchaux, 149 La. 733, 90 So. 145; Hart v. Picou, 147 La. 1017, 86 So. 479; Triche v. Labiche, 121 La. 138, 46 So. 130; Vial v. Elfer, 121 La. 148, 46 So. 134.

The Supreme Court has also held that, where the result of an election does not reflect the wishes of the majority of the voters due to fraud, illegality, and irregularity, the election should be set aside. McCrary on Elections, § 461; Bartmess v. Hendricks, 150 La. 627, 91 So. 68; Gonsoulin v. Decuir, 121 La. 611, 46 So. 668; Davis v. Hill, 8 La. App. 43; Womack v. Nettles, supra, and other authorities cited supra.

Considering the petition as a whole, we are of the opinion that it does set forth a

right or cause of action, and that the exceptions were not well founded, and should have been overruled.

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from be reversed, and that there now be judgment herein overruling the exceptions of no right or cause of action, and that the case be remanded to the lower court for further proceedings according to law and not inconsistent with the views herein expressed.

Reversed and remanded.